

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-342-CR

JIM DON MCANALLY                                                          APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

------------

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Jim Don McAnally appeals his conviction for possession of less than one gram of methamphetamine. In a single point, McAnally argues that the trial court erred by denying his motion to suppress. We will affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

Officer Jeffrey Chase of the Northlake Police Department was driving on Interstate 35 in Northlake early one morning when he saw McAnally's vehicle fail to maintain a single lane and saw McAnally flick a cigarette out of the vehicle. He also noticed that McAnally appeared to be trying to hide something. Officer Chase pulled over McAnally at 1:53 a.m. A camera in the officer's vehicle videotaped the stop.

When Officer Chase approached the vehicle, he noticed a cardboard box labeled "hydrochloric acid" with a shirt tucked inside it on the passenger-side floorboard. He also noticed "numerous" paper matchbooks and the backers of those matchbooks scattered all over the floorboard and center console of the vehicle. He testified that, based on his training and experience with narcotics investigations, red phosphorus strips from matchbooks are used in methamphetamine production.[2]

Officer Chase asked McAnally to step out of the vehicle and asked him a series of questions. When asked general questions not related to drug usage, McAnally would look Officer Chase in the eyes and answer quickly, but when

---

[2] Officer Chase did not testify that hydrochloric acid is commonly used in production of methamphetamine, but he explained that he was suspicious that McAnally was trying to hide something inside the box by the way the shirt completely covered its contents.

asked about illegal drugs, McAnally would avoid eye contact. Officer Chase also noticed that McAnally "was very ungroomed, unkempt," had red, heavy eyes, appeared not to have slept in days, and looked "strung out." The officer requested consent to search McAnally's vehicle, and McAnally refused.

At 1:59 a.m., Officer Chase told McAnally that he was going to call for a K-9 unit to conduct a "sniff search" of his vehicle and that he was not free to leave. Officer Chase contacted Denton County dispatch and several other K-9 officers, but they were unavailable. He then contacted the Fort Worth Police Department, and it sent a K-9 unit to the scene. Officer Chase testified that approximately thirty minutes passed between when he stopped McAnally and when he learned that a K-9 unit was on its way.

The K-9 unit arrived at approximately 3:11 a.m., over seventy minutes after Officer Chase told McAnally that he was not free to leave and returned to his squad car to call for a K-9 unit. The drug dog alerted on McAnally's vehicle, and a search of the vehicle revealed a pipe loaded with methamphetamine, a straw with residue, and a baggie of what was later determined to be methamphetamine.

### III. MOTION TO SUPPRESS

In his sole point, McAnally argues that the trial court erred by denying his motion to suppress because Officer Chase lacked reasonable suspicion to

3

initiate a traffic stop, because Officer Chase lacked reasonable suspicion to continue detaining McAnally to wait for a K-9 unit, and because the extended detention of McAnally while awaiting the K-9 unit was unreasonable.

## A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006);

4

*Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

### B. Reasonable Suspicion for Initial Traffic Stop

A police officer has the authority to stop and temporarily detain a driver who has violated a traffic law. *See Garcia v. State*, 827 S.W.2d 937, 944

(Tex. Crim. App. 1992); *Armitage v. State*, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982). An automobile stop is justified when an officer has reasonable suspicion to believe that a traffic violation has occurred. *Goudeau v. State*, 209 S.W.3d 713, 716 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Reasonable suspicion exists if the officer has specific, articulable facts that, combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or will soon be engaged in criminal activity. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Thus, when stopping vehicles for an investigative detention based on a traffic violation, the State need not prove that the detainee actually committed a traffic violation. *See Drago v. State*, 553 S.W.2d 375, 377 (Tex. Crim. App. 1977).

Section 365.012(a) of the Texas Health and Safety Code provides that a person commits an offense if he "disposes . . . of litter or other solid waste at a place that is not an approved solid waste site, including a place on or within 300 feet of a public highway." Tex. Health & Safety Code Ann. § 365.012(a) (Vernon Supp. 2009). Litter includes "nondecayable solid waste,

except ashes, that consists of . . . combustible waste material, including paper, rags, . . . , or similar materials." *Id.* § 365.011(6)(B) (Vernon 2001).

In the present case, Officer Chase testified that he saw McAnally "appear to flick a lit cigarette" out of the driver's side window and that it "came back towards [the officer's] car." McAnally argues that Officer Chase's testimony shows that he was unsure of what he saw and that he could have seen cigarette ashes, which are excluded from the definition of "litter" under the statute. *See id.* Nevertheless, the State needed to prove only that Officer Chase had a reasonable suspicion that McAnally had littered; it did not have to prove that McAnally actually had committed the offense of littering. *See Drago*, 553 S.W.2d at 377. We hold that Officer Chase had reasonable suspicion to stop McAnally for littering.[3]

## C. Reasonable Suspicion for Continued Detention

Having determined that Officer Chase had reasonable suspicion to stop McAnally, we must now decide whether the officer had reasonable suspicion to continue detaining McAnally.

---

[3] Having found a basis for reasonable suspicion to stop McAnally, we need not address whether Officer Chase had reasonable suspicion to stop McAnally for the offense of failure to maintain a single lane.

7

If, during a valid traffic stop and detention, the officer develops reasonable suspicion that the detainee is engaged in criminal activity, prolonged or continued detention is justified. *Davis v. State*, 947 S.W.2d 240, 243–44 (Tex. Crim. App. 1997); *McQuarters v. State*, 58 S.W.3d 250, 256 (Tex. App.—Fort Worth 2001, pet. ref'd). More specifically, if a valid traffic stop evolves into an investigative detention of other criminal activity (such as possession of a controlled substance) so that a canine sniff can take place, reasonable suspicion is required to prolong the detention and refusal to consent to search does not, in and of itself, establish that requirement. *Sieffert v. State*, 290 S.W.3d 478, 484 (Tex. App.—Amarillo 2009, no pet.); *Green v. State*, 256 S.W.3d 456, 462 (Tex. App.—Waco 2008, no pet.).

Here, several facts led Officer Chase to suspect that drugs were inside McAnally's vehicle, including the box labeled "hydrochloric acid" with a shirt covering its contents, the paper matchbooks, and the paper backers to those matchbooks inside McAnally's vehicle, McAnally's appearance, and McAnally's mannerisms when he answered the officer's questions.[4] Consequently, we hold

---

[4] Viewed in isolation, some of these facts might not support a reasonable suspicion finding. For example, as McAnally points out on appeal, Officer Chase testified on cross-examination that hydrochloric acid could be used to clean swimming pools. However, conduct that may be innocent when viewed in isolation may give rise to reasonable suspicion when viewed in the light of the totality of the circumstances. *Woods v. State*, 956 S.W.2d 33, 38

8

that, based on the totality of the circumstances, Officer Chase testified to specific, articulable facts that, when combined with rational inferences from those facts, would lead him to conclude that McAnally was engaged in criminal activity. *See Castro*, 227 S.W.3d at 741; *Davis*, 947 S.W.2d at 243–44; *McQuarters*, 58 S.W.3d at 256. Accordingly, we hold that Officer Chase had reasonable suspicion to continue his detention of McAnally.

## D. Reasonableness of Continued Detention

We must now address whether the length of McAnally's detention was reasonable. A detention based on reasonable suspicion must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325 (1983). Although the length of a detention may render a traffic stop unreasonable, there is no rigid, bright-line time limitation. *United States v. Sharpe*, 470 U.S. 675, 685, 105 S. Ct. 1568, 1575 (1985); *Love v. State*, 252 S.W.3d 684, 687 (Tex. App.—Texarkana 2008, pet. ref'd); *Belcher v. State*, 244 S.W.3d 531, 539 (Tex. App.—Fort Worth 2007, no pet.). The reasonableness of the duration of a detention depends on whether the police diligently pursued a means of investigation that was likely to confirm or dispel any suspicions quickly, during

---

(Tex. Crim. App. 1997); *Parker v. State*, No. 11-08-00214-CR, 2009 WL 2883423, at *7 (Tex. App.—Eastland Sept. 10, 2009, no pet. h.).

which time it was necessary to detain the defendant. *Sharpe*, 470 U.S. at 686, 105 S. Ct. at 1575; *Love*, 252 S.W.3d at 687; *Belcher*, 244 S.W.3d at 539. Fourth Amendment reasonableness requires a balance between serving the interest of the public as weighed against the individual's right to be free from arbitrary detentions and intrusions. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004).

Here, the videotape of the stop shows that Officer Chase activated his lights and pulled over McAnally at 1:53 a.m. Officer Chase returned to his vehicle at 1:59 a.m. to request a K-9 unit. The audio on the videotape is intermittent, and there is no audio of Officer Chase requesting a K-9 unit. However, Officer Chase testified that he called Denton County dispatch to request a K-9 unit and that "because of the heavy call load they're under dispatching for the entire county," he also called "at least" two or three other K-9 officers on his personal cell phone. He left several messages and heard back from one officer who said he was not on duty.

Officer Chase testified that he "got word" that a K-9 unit from the Fort Worth Police Department was on its way at 2:26 a.m., but the video shows that at 2:15 a.m., he told McAnally that the Fort Worth Police Department would be there "in a couple of minutes." He also offered to get McAnally a

jacket that he saw inside his vehicle.[5]  Twenty-three minutes later, at 2:38

a.m., Officer Chase got out of his vehicle, told McAnally that the K-9 unit was

on its way, and offered for McAnally to sit in his squad car until the K-9 unit

arrived.  McAnally agreed to wait inside the squad car.  Minutes later, Officer

Chase told McAnally that he had called the K-9 unit again and that it was in

route.  The K-9 unit arrived at approximately 3:11 a.m., seventy-two minutes

after Officer Chase told McAnally that he was not free to leave and went to his

vehicle to call for a K-9 unit.

We agree with McAnally that his continued detention for over seventy

minutes while waiting for a K-9 unit to arrive appears unreasonable at first

glance, but applying the fact-specific Fourth Amendment standard for

reasonableness, as we must, we note that Officer Chase's testimony shows

that he was diligent in pursuing a K-9 unit.  *See Sharpe*, 470 U.S. at 686, 105

S. Ct. at 1575; *Love*, 252 S.W.3d at 687; *Belcher*, 244 S.W.3d at 539.

Officer Chase's testimony demonstrates that he diligently searched for an

available K-9 unit for twenty to thirty minutes until he secured one from a

neighboring county in the early morning hours.  *See Love*, 252 S.W.3d at 688

(holding that twenty-minute detention for K-9 unit to arrive was not only

---

[5] Officer Chase testified that the temperature was between 30 and 50 degrees that night.

11

reasonable but expeditious considering that it had to come from neighboring county at night). He also called to check on the status of the K-9 unit at least once during the approximately thirty minutes that he waited for its arrival. Additionally, Officer Chase offered to get McAnally a jacket while he waited and allowed McAnally to wait inside the squad car, thus reducing at least to some extent the level of intrusion generated by the detention. *See Belcher*, 244 S.W.3d at 542 (considering fact that officer permitted defendant to smoke and answer his cell phone during twenty-seven minute detention while awaiting K-9 unit as reducing to some extent level of intrusion).

Balancing the public interest served with McAnally's Fourth Amendment right to be free from arbitrary detentions and intrusions and viewing all of the evidence in the light most favorable to the trial court's ruling, we cannot conclude that, based on the totality of the circumstances, McAnally's detention for approximately seventy minutes while Officer Chase located a K-9 unit and awaited its arrival was unreasonable. *See Kothe*, 152 S.W.3d at 63; *Parker*, 2009 WL 2883423, at *4, 8 (holding continued detention reasonable where officer attempted to locate K-9 unit for eighteen minutes and unit arrived forty minutes later); *Strauss v. State*, 121 S.W.3d 486, 492 (Tex. App.—Amarillo 2003, pet. ref'd) (holding seventy-five-minute detention from stop until drug dog arrived was not unreasonable); *Josey v. State*, 981 S.W.2d 831, 840–41

12

(Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (holding ninety-minute detention from stop until officers searched vehicle was reasonable). Accordingly, we overrule McAnally's sole point.

## IV. Conclusion

Having overruled McAnally's sole point, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: November 19, 2009