COURT OF APPEALS

SECOND
DISTRICT OF TEXAS

FORT
WORTH

 

 

NO. 2-08-342-CR

 

 

JIM DON MCANALLY                                                           APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                              STATE

 

------------

 

            FROM
THE 158TH DISTRICT COURT OF DENTON COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

I. Introduction

Appellant Jim Don
McAnally appeals his conviction for possession of less than one gram of
methamphetamine.  In a single point, McAnally
argues that the trial court erred by denying his motion to suppress.  We will affirm.

 

 








II. Factual and
Procedural Background

Officer Jeffrey
Chase of the Northlake Police Department was driving on Interstate 35 in
Northlake early one morning when he saw McAnally=s
vehicle fail to maintain a single lane and saw McAnally flick a cigarette out of
the vehicle.  He also noticed that
McAnally appeared to be trying to hide something.  Officer Chase pulled over McAnally at 1:53
a.m.  A camera in the officer=s
vehicle videotaped the stop. 

 
      When Officer Chase approached the vehicle,
he noticed a cardboard box labeled Ahydrochloric acid@ with a shirt
tucked inside it on the passenger-side floorboard.  He also noticed Anumerous@ paper matchbooks
and the backers of those matchbooks scattered all over the floorboard and
center console of the vehicle.  He
testified that, based on his training and experience with narcotics
investigations, red phosphorus strips from matchbooks are used in
methamphetamine production.[2]  








Officer Chase
asked McAnally to step out of the vehicle and asked him a series of
questions.  When asked general questions
not related to drug usage, McAnally would look Officer Chase in the eyes and
answer quickly, but when asked about illegal drugs, McAnally would avoid eye
contact.  Officer Chase also noticed that
McAnally Awas very ungroomed, unkempt,@ had red, heavy
eyes, appeared not to have slept in days, and looked Astrung out.@  The officer requested consent to search McAnally=s vehicle, and
McAnally refused.   

At 1:59 a.m.,
Officer Chase told McAnally that he was going to call for a K-9 unit to conduct
a Asniff search@ of his vehicle
and that he was not free to leave. 
Officer Chase contacted Denton County dispatch and several other K-9
officers, but they were unavailable.  He
then contacted the Fort Worth Police Department, and it sent a K-9 unit to the
scene.  Officer Chase testified that
approximately thirty minutes passed between when he stopped McAnally and when
he learned that a K-9 unit was on its way. 


The K-9 unit
arrived at approximately 3:11 a.m., over seventy minutes after Officer Chase
told McAnally that he was not free to leave and returned to his squad car to
call for a K-9 unit.  The drug dog
alerted on McAnally=s vehicle, and a search of the vehicle
revealed a pipe loaded with methamphetamine, a straw with residue, and a baggie
of what was later determined to be methamphetamine.

III. Motion to Suppress








In his sole point,
McAnally argues that the trial court erred by denying his motion to suppress
because Officer Chase lacked reasonable suspicion to initiate a traffic stop,
because Officer Chase lacked reasonable suspicion to continue detaining
McAnally to wait for a K-9 unit, and because the extended detention of McAnally
while awaiting the K-9 unit was unreasonable. 

A.  Standard of
Review








We
review a trial court=s ruling on a motion to suppress
evidence under a bifurcated standard of review. 
Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  The trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24B25 (Tex.
Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App.
2000), modified on other grounds by State v. Cullen, 195 S.W.3d 696
(Tex. Crim. App. 2006).  Therefore, we
give almost total deference to the trial court=s
rulings on (1) questions of historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact questions
that turn on an evaluation of credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108B09 (Tex.
Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652B53 (Tex.
Crim. App. 2002).  But when
application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court=s
rulings on those questions de novo.  Amador,
221 S.W.3d at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim.
App. 2005); Johnson, 68 S.W.3d at 652B53.

Stated
another way, when reviewing the trial court=s ruling
on a motion to suppress, we must view the evidence in the light most favorable
to the trial court=s ruling.  Wiede, 214 S.W.3d at 24; State v.
Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the record is silent on the reasons for
the trial court=s ruling, or when there are no
explicit fact findings and neither party timely requested findings and
conclusions from the trial court, we imply the necessary fact findings that
would support the trial court=s ruling
if the evidence, viewed in the light most favorable to the trial court=s
ruling, supports those findings.  State
v. Garcia-Cantu, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); see
Wiede, 214 S.W.3d at 25.  We then
review the trial court=s legal ruling de novo unless
the implied fact findings supported by the record are also dispositive of the
legal ruling.  Kelly, 204 S.W.3d
at 819.

B. 
Reasonable Suspicion for Initial Traffic Stop








A police
officer has the authority to stop and temporarily detain a driver who has
violated a traffic law.  See Garcia
v. State, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992); Armitage v. State,
637 S.W.2d 936, 939 (Tex. Crim. App. 1982). 
An automobile stop is justified when an officer has reasonable suspicion
to believe that a traffic violation has occurred.  Goudeau v. State, 209 S.W.3d 713, 716
(Tex. App.CHouston [14th Dist.] 2006, no
pet.).  Reasonable suspicion exists if
the officer has specific, articulable facts that, combined with rational
inferences from those facts, would lead him to reasonably conclude that a
particular person actually is, has been, or will soon be engaged in criminal
activity.  Castro v. State, 227
S.W.3d 737, 741 (Tex. Crim. App. 2007). 
This is an objective standard that disregards any subjective intent of
the officer making the stop and looks solely to whether an objective basis for
the stop exists.  Ford v. State,
158 S.W.3d 488, 492 (Tex. Crim. App. 2005). 
Thus, when stopping vehicles for an investigative detention based on a
traffic violation, the State need not prove that the detainee actually
committed a traffic violation.  See
Drago v. State, 553 S.W.2d 375, 377 (Tex. Crim. App. 1977). 








Section
365.012(a) of the Texas Health and Safety Code provides that a person commits
an offense if he Adisposes . . . of litter or
other solid waste at a place that is not an approved solid waste site,
including a place on or within 300 feet of a public highway.@  Tex. Health & Safety Code Ann. '
365.012(a) (Vernon Supp. 2009).  Litter
includes Anondecayable solid waste, except
ashes, that consists of . . . combustible waste material, including paper,
rags, . . . , or similar materials.@  Id. '
365.011(6)(B) (Vernon 2001). 

In the present
case, Officer Chase testified that he saw McAnally Aappear to flick a
lit cigarette@ out of the driver=s side window and
that it Acame back towards
[the officer=s] car.@  McAnally argues that Officer Chase=s testimony shows
that he was unsure of what he saw and that he could have seen cigarette ashes,
which are excluded from the definition of Alitter@ under
the statute.  See id.  Nevertheless, the State needed to prove only
that Officer Chase had a reasonable suspicion that McAnally had littered; it
did not have to prove that McAnally actually had committed the offense of
littering.  See Drago, 553 S.W.2d
at 377.  We hold that Officer Chase had
reasonable suspicion to stop McAnally for littering.[3]


C. 
Reasonable Suspicion for Continued Detention

Having
determined that Officer Chase had reasonable suspicion to stop McAnally, we
must now decide whether the officer had reasonable suspicion to continue
detaining McAnally.








If,
during a valid traffic stop and detention, the officer develops reasonable
suspicion that the detainee is engaged in criminal activity, prolonged or
continued detention is justified.  Davis
v. State, 947 S.W.2d 240, 243B44 (Tex.
Crim. App. 1997); McQuarters v. State, 58 S.W.3d 250, 256 (Tex. App.CFort
Worth 2001, pet. ref=d).  More specifically, if a valid traffic stop
evolves into an investigative detention of other criminal activity (such as
possession of a controlled substance) so that a canine sniff can take place,
reasonable suspicion is required to prolong the detention and refusal to
consent to search does not, in and of itself, establish that requirement.  Sieffert v. State, 290 S.W.3d 478, 484
(Tex. App.CAmarillo 2009, no pet.); Green
v. State, 256 S.W.3d 456, 462 (Tex. App.CWaco
2008, no pet.). 








Here, several
facts led Officer Chase to suspect that drugs were inside McAnally=s vehicle,
including the box labeled Ahydrochloric acid@ with a shirt
covering its contents, the paper matchbooks, and the paper backers to those
matchbooks inside McAnally=s vehicle,
McAnally=s appearance, and
McAnally=s mannerisms when
he answered the officer=s questions.[4]  Consequently, we hold that, based
on the totality of the circumstances, Officer Chase testified to specific,
articulable facts that, when combined with rational inferences from those
facts, would lead him to conclude that McAnally was engaged in criminal
activity.  See Castro, 227 S.W.3d
at 741; Davis, 947 S.W.2d at 243B44; McQuarters,
58 S.W.3d at 256.  Accordingly, we
hold that Officer Chase had reasonable suspicion to continue his detention of
McAnally. 

D. 
Reasonableness of Continued Detention








We must
now address whether the length of McAnally=s
detention was reasonable.  A detention
based on reasonable suspicion must be temporary and last no longer than is
necessary to effectuate the purpose of the stop.   Florida v. Royer, 460 U.S. 491, 500, 103
S. Ct. 1319, 1325 (1983).  Although the
length of a detention may render a traffic stop unreasonable, there is no
rigid, bright‑line time limitation. 
United States v. Sharpe, 470 U.S. 675, 685, 105 S. Ct. 1568, 1575
(1985); Love v. State, 252 S.W.3d 684, 687 (Tex. App.CTexarkana
2008, pet. ref=d); Belcher v. State, 244
S.W.3d 531, 539 (Tex. App.CFort
Worth 2007, no pet.).  The reasonableness
of the duration of a detention depends on whether the police diligently pursued
a means of investigation that was likely to confirm or dispel any suspicions
quickly, during which time it was necessary to detain the defendant.  Sharpe, 470 U.S. at 686,  105 S. Ct. at 1575; Love, 252 S.W.3d
at 687; Belcher, 244 S.W.3d at 539. 
Fourth Amendment reasonableness requires a balance between serving the
interest of the public as weighed against the individual=s right to be free
from arbitrary detentions and intrusions. Kothe v. State, 152 S.W.3d 54,
63 (Tex. Crim. App. 2004).

 Here, the videotape of the stop shows that
Officer Chase activated his lights and pulled over McAnally at 1:53 a.m.  Officer Chase returned to his vehicle at 1:59
a.m. to request a K-9 unit.  The audio on
the videotape is intermittent, and there is no audio of Officer Chase requesting
a K-9 unit.  However, Officer Chase
testified that he called Denton County dispatch to request a K-9 unit and that Abecause
of the heavy call load they=re under
dispatching for the entire county,@ he also
called Aat least@ two or
three other K-9 officers on his personal cell phone.  He left several messages and heard back from
one officer who said he was not on duty.  
 








Officer Chase
testified that he Agot word@ that a
K-9 unit from the Fort Worth Police Department was on its way at 2:26 a.m., but
the video shows that at 2:15 a.m., he told McAnally that the Fort Worth Police
Department would be there Ain a
couple of minutes.@ 
He also offered to get McAnally a jacket that he saw inside his vehicle.[5]  Twenty-three minutes later, at 2:38 a.m.,
Officer Chase got out of his vehicle, told McAnally that the K-9 unit was on
its way, and offered for McAnally to sit in his squad car until the K-9 unit
arrived.  McAnally agreed to wait inside
the squad car.  Minutes later, Officer
Chase told McAnally that he had called the K-9 unit again and that it was in
route.  The K-9 unit arrived at
approximately 3:11 a.m., seventy-two minutes after Officer Chase told McAnally
that he was not free to leave and went to his vehicle to call for a K-9 unit.








We agree
with McAnally that his continued detention for over seventy minutes while
waiting for a K-9 unit to arrive appears unreasonable at first glance, but
applying the fact‑specific Fourth Amendment standard for reasonableness,
as we must, we note that Officer Chase=s
testimony shows that he was diligent in pursuing a K-9 unit.  See Sharpe, 470 U.S. at 686,
105 S. Ct. at 1575; Love, 252 S.W.3d at 687; Belcher, 244 S.W.3d
at 539.  Officer Chase=s
testimony demonstrates that he diligently searched for an available K-9 unit
for twenty to thirty minutes until he secured one from a neighboring county in
the early morning hours.  See Love,
252 S.W.3d at 688 (holding that twenty-minute detention for K-9 unit to arrive
was not only reasonable but expeditious considering that it had to come from
neighboring county at night).  He also called
to check on the status of the K-9 unit at least once during the approximately
thirty minutes that he waited for its arrival. 
Additionally, Officer Chase offered to get McAnally a jacket while he
waited and allowed McAnally to wait inside the squad car, thus reducing at
least to some extent the level of intrusion generated by the detention.  See Belcher, 244 S.W.3d at 542
(considering fact that officer permitted defendant to smoke and answer his cell
phone during twenty-seven minute detention while awaiting K-9 unit as reducing
to some extent level of intrusion).








 Balancing the public interest served with
McAnally=s Fourth
Amendment right to be free from arbitrary detentions and intrusions and viewing
all of the evidence in the light most favorable to the trial court=s
ruling, we cannot conclude that, based on the totality of the circumstances,
McAnally=s
detention for approximately seventy minutes while Officer Chase located a K-9
unit and awaited its arrival was unreasonable. 
See Kothe, 152 S.W.3d at 63; Parker, 2009 WL 2883423,
at *4, 8 (holding continued detention reasonable where officer attempted to
locate K-9 unit for eighteen minutes and unit arrived forty minutes later); Strauss
v. State, 121 S.W.3d 486, 492 (Tex. App.CAmarillo 2003,
pet. ref=d) (holding
seventy‑five‑minute detention from stop until drug dog arrived was
not unreasonable); Josey v. State, 981 S.W.2d 831, 840B41 (Tex. App.CHouston [14th
Dist.] 1998, pet. ref=d) (holding ninety‑minute detention
from stop until officers searched vehicle was reasonable).  Accordingly, we overrule McAnally=s sole
point.  

IV. Conclusion

Having overruled
McAnally=s sole point, we
affirm the trial court=s judgment.

 

SUE WALKER       

JUSTICE

 

PANEL:
CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:
November 19, 2009

 











[1]See Tex. R. App. P. 47.4.





[2]Officer Chase did not
testify that hydrochloric acid is commonly used in production of
methamphetamine, but he explained that he was suspicious that McAnally was
trying to hide something inside the box by the way the shirt completely covered
its contents.  





[3]Having found a basis for
reasonable suspicion to stop McAnally, we need not address whether Officer
Chase had reasonable suspicion to stop McAnally for the offense of failure to
maintain a single lane.





[4]Viewed in isolation, some
of these facts might not support a reasonable suspicion finding.  For example, as McAnally points out on
appeal, Officer Chase testified on cross-examination that hydrochloric acid
could be used to clean swimming pools. 
However, conduct that may be innocent when viewed in isolation may give
rise to reasonable suspicion when viewed in the light of the totality of the circumstances.  Woods v. State, 956 S.W.2d 33, 38
(Tex. Crim. App. 1997); Parker v. State, No. 11‑08‑00214‑CR,
2009 WL 2883423, at *7 (Tex. App.CEastland Sept. 10, 2009, no pet. h.). 





[5]Officer Chase testified
that the temperature was between 30 and 50 degrees that night.