

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-07-00147-CR

_____

WILLLIE RAY LOVE, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 276th Judicial District Court
Titus County, Texas
Trial Court No. F13,551

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley
Concurring Opinion by Justice Carter

OPINION

After having been convicted by a jury of possession of more than fifty pounds and less than 2,000 pounds of marihuana, a second-degree felony, and having been assessed a penalty of fifteen years' confinement and a fine of $10,000.00 by that jury, Willie Ray Love, Jr., files his appeal.

Love's appeal is limited to one alleged point of error: he maintains that the trial court erred in its refusal to suppress the evidence obtained after a search of his automobile, claiming that the evidence found was the product of an unreasonable search and seizure. We find that the trial court did not err, ratify its determination, and affirm the judgment.

The facts surrounding and leading up to the complained-of search are uncontroverted. Love was proceeding north on U.S. Highway 59 in Marion County on October 5, 2004, when he was pulled over by State Trooper Michael Horn for traveling 76 miles per hour in a 65-mile-per-hour zone. The time of the traffic stop was about 9:35 p.m. When Love was alerted to stop, he pulled into the center turn or dividing lane, but Horn directed him with his patrol car's public address speaker to move to the right-hand shoulder of the road; Love promptly complied.

After the traffic stop, Love provided his driver's license to Horn. Horn, noticing that there was a substantial amount of luggage and a large plastic storage box in plain view, questioned Love about his travel plans. Love, acting nervously by spitting often and by failing to make eye contact with Horn, indicated that he had commenced his travel at Houston. At first, he said that Shreveport, Louisiana, was his destination and then changed to say that he was on his way to Monroe, Louisiana,

2

by way of Shreveport, Louisiana. During this questioning period, Love indicated that it was his aim to travel to see his cousin, but he had only a telephone number of the cousin and no address for him. Love told Horn that the duration of his stay was to be about two days. Upon further questioning, Love said that he had previously had only a previous minor drug conviction. The automobile driven by Love was a rental car.

The questioning during the traffic stop aroused suspicions with Horn because: (1) if a person were traveling north from Houston to Shreveport, Louisiana, he would have driven past two well-marked major highway turnoffs which would have carried him easterly toward that destination, but he was no longer traveling toward his stated geographic goal; (2) the volume of luggage was far greater than one would ordinarily expect a person to carry for a short two-day stay; (3) a criminal background check revealed that Love had two felony drug convictions, not the single minor one to which he had admitted; (4) Love's nervous demeanor exceeded the normal scope of nervousness he would be expected to display; (5) Highway 59 is a major drug artery; (6) Love was driving a rental car, this being a characteristic means of transportation for those transporting drugs; and (7) Love was inconsistent, vague, and uncertain about his destination and was not traveling the route which would carry him to the place he indicated he was attempting to go.

After these suspicions were aroused, Horn requested permission of Love to search the vehicle and was denied permission to search; this denial took place some twenty-five minutes after the initial traffic stop. Horn then attempted to locate a dog trained in narcotics detection to conduct a "free air"

3

search of the exterior of the automobile driven by Love. There was not then such a dog in Marion County and the Department of Public Safety (DPS) drug dog in Texarkana was engaged elsewhere. Horn located such a drug dog which worked with the sheriff's office of neighboring Harrison County and requested its services. When the dog arrived, about forty-five minutes after the initial traffic stop, it alerted to the presence of drugs on both front doors of the automobile driven by Love. Using the dog's alert as probable cause, a search of the automobile was conducted, resulting in the discovery and seizure of some 93.44 pounds of marihuana.

Love maintains that the intervention of forty-five minutes from the initial traffic stop to the time of the free-air search by the narcotics dog was too long and that the detention was unwarranted. Therefore, he maintains, the search was not reasonable.

Love's motion to suppress the results of the search was the subject of a hearing pursuant to Article 28.01 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 28.01 (Vernon 2006). Love's motion to suppress was denied.

We review the trial court's decision on a motion to suppress evidence by applying a bifurcated standard of review deferring to the trial court's determination of historical facts that depend on credibility, but review de novo the trial court's application of the law. *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007); *see Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The trial court's evidentiary ruling "will be upheld on appeal if it is correct on any theory of law that finds support in the record." *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App.

4

2006); *see Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). Generally, we review de novo determinations of probable cause after granting deference to the trial court's determination of historical facts. *Guzman*, 955 S.W.2d at 87.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend. IV. It is well settled in Fourth Amendment jurisprudence that absent a warrant or some functional equivalent giving probable cause to arrest, only a limited, investigatory detention of an individual is permitted. *Burkes v. State*, 830 S.W.2d 922, 925 (Tex. Crim. App. 1991). An investigative detention during the course of a traffic stop in which the subject is not free to leave is a seizure for purposes of the Fourth Amendment, and the appellate court must analyze the stop under the reasonableness standard. *Whren v. United States*, 517 U.S. 806, 810 (1996).

Under *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968), the determination of whether an investigative detention is reasonable is a two-pronged inquiry: whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. This determination is a factual one and is made and reviewed by considering the totality of the circumstances existing throughout the detention. *Loesch v. State*, 958 S.W.2d 830, 832 (Tex. Crim. App. 1997).

Certainly, the length of a detention may render a traffic stop unreasonable and there is not an absolute and unbending time line which prescribes when this has become unreasonable. *United States v. Sharpe*, 470 U.S. 675, 679 (1985). In lieu of such an unbending rule or bright line, common

5

sense and ordinary human experience must govern over rigid criteria. *Id.* at 685. The reasonableness of the duration of a detention depends on whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions expeditiously, during which time it was necessary to detain the defendant. *Id.* at 686. In determining the reasonableness of the duration of a detention, the trial and appellate courts may consider legitimate law enforcement purposes served by any delay in the officer's investigation. *Id.* at 685. Fourth Amendment reasonableness requires a balance between serving the interest of the public as weighed against the individual's right to be free from arbitrary detentions and intrusions. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004).

In looking at the actions that night, we should first take into account that there are two time frames involved here: (1) the time between the initial stop of Love and (2) the time necessary to bring a drug dog onto the scene. Was either of these time frames so unreasonable as to constitute a violation?

One of the factors which enters into the equation of determining reasonableness is the location of the search and the time of day it was conducted. Breaking the forty-five-minute time period between the initial stop and the search of the vehicle into two portions is helpful.

The first part of the time period was the initial stop, the questioning of Love, the radio confirmation of the information given by Love to Horn, a second questioning of Love concerning the inconsistencies which the confirmation raised, and the request to permit a search of Love's car.

6

This consumed twenty-five minutes and is not an unreasonable period of time. As a result of the information gleaned during this period of time, Horn had acquired "articulable facts that, when combined with rational inferences from those facts" led him to have a reasonable belief that Love was actually engaged in criminal activity. *See Castro v. State*, 227 S.W.3d 737, 740 (Tex. Crim. App. 2007).

The second period, then, would be the time between Love's refusal to permit a search of his automobile and the commencement of the open-air search by the drug dog, a period which took an additional twenty minutes. We look at those surrounding circumstances to determine if this time period was unreasonable. After his suspicions had been aroused and after he had been denied permission to conduct a search of the automobile, Horn did not delay but, rather, immediately began an attempt to locate a drug dog to conduct a search of the exterior of Love's vehicle for the presence of the odor of contraband. Marion County had no drug dog and one would need to be located and brought from elsewhere. The first attempt was to enlist the aid of the DPS's dog, stationed in Texarkana. That dog being unavailable, Horn then contacted the nearest law enforcement entity having such a dog, that being the neighboring sheriff's office in Harrison County. Considering the distances involved and the fact that it was night time, it is somewhat surprising that only twenty minutes expired before the dog arrived on the scene. Considering the circumstances, this time frame suggests that the time between the determination that a further investigation by use of a drug dog and its actual deployment was done not only in a reasonable time frame, but expeditiously. The propriety

7

of the stop's duration is judged by assessing whether the police diligently pursued a means of investigation that was likely to quicky dispel or confirm their suspicions. *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

Finding no error, we affirm the judgment.

Bailey C. Moseley
Justice

CONCURRING OPINION

Law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. Nevertheless, even a temporary detention of this kind is not permissible unless the circumstances on which the officers rely objectively support a reasonable suspicion that the person detained actually is, has been, or soon will be engaged in criminal activity. *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) (citing *Crockett v. State*, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991)).

To justify an investigative detention, an officer must have reasonable suspicion, based on specific, articulable facts that, in light of the officer's experience and general knowledge, lead the officer to a reasonable conclusion that criminal activity is underway and that the detained person is

connected with the activity. *Perez v. State*, 818 S.W.2d 512, 516 (Tex. App.—Houston [1st Dist.] 1991, no pet.).

The line drawn between reasonable and unreasonable detention has evolved. In *Davis*, the Texas Court of Criminal Appeals found that the facts did not support a conclusion that the defendant was engaged in or about to be engaged in criminal activity even though the evidence showed alleged inconsistent statements by occupants of the vehicle, the passenger had a drug conviction, the vehicle was not registered in the driver's name, and the driver did not appear to the officer to be on a business trip. After the defendant refused to consent, the drug dog was summoned and the vehicle, but not the driver, was detained. The Texas Court of Criminal Appeals held that the court of appeals erred in determining that the detention and search were justified. *Davis*, 947 S.W.2d at 241–42.

Very recently, the Texas Court of Criminal Appeals found a twenty-five-minute detention and ensuing search were reasonable after the defendant refused to consent to a search and a drug dog was then obtained. The court found facts supporting that detention included two Florida "drug convoy" cars, diversionary tactics by one of the drivers, overdue rental car, and inconsistent stories. *Madden v. State*, 242 S.W.3d 504, 517 (Tex. Crim. App. 2007).

Based on the most recent opinions from the Texas Court of Criminal Appeals, I agree that the facts here are sufficient to justify a finding that the detention was permissible.

The question here is what articulable facts support an officer's reasonable suspicion and conclusion that Love was involved in or connected to criminal conduct?

9

First, we must remember that this detention occurred after Love specifically invoked his Fourth Amendment right against an unreasonable search by refusing to consent to the search.

The majority opinion cites seven reasons why the officer's suspicions were aroused, seeming to give equal credence to each. I think we should acknowledge that some of these facts lend considerably less support than others that Love was involved in unusual activity related to crime.

1. <u>Highway 59 is a major drug artery.</u> I would dare to say that a comprehensive study of the appellate opinions in Texas would demonstrate that every interstate or United States highway in Texas is considered a major drug corridor. I find this fact lends little, if any, credence to a conclusion that a particular individual who is traveling on a major highway is in possession of drugs. It is also true that all persons who possess drugs on a highway are driving or traveling in a vehicle, but I doubt that anyone would seriously think that merely because one is driving a vehicle he or she is to be suspected of possessing drugs. Likewise, I do not think that merely driving a vehicle on a major highway, which is done by thousands of law-abiding people every day, contributes to a reasonable suspicion that the driver is a drug courier.

2. <u>More nervous than normal.</u> Almost every person who sees flashing lights in the rearview mirror and realizes that a police officer is about to detain him or her becomes somewhat nervous. How nervous do you have to be to exceed that normally expected? Some people by nature are more nervous than others and may begin crying when receiving a speeding ticket. Once again, this appears to be a fact that has little, if any, relevance to a reasonable conclusion that one is involved in crime

10

(generally drug possession). In a recent case, the Texas Court of Criminal Appeals labeled this purported nervousness as "lagniappe--icing-on-the-cake--to the determination of reasonable suspicion." *Madden*, 242 S.W.3d at 517.

3. and 4. <u>Information about his destination—failure to drive toward Shreveport.</u> The officer testified that Love told him he was driving to Shreveport, Louisiana, and then later stated he was going to Monroe. If he intended to drive to Shreveport, he had driven past the interstate highway leading to Shreveport. This could indicate to a police officer that Love was attempting to deceive the officer.

5. <u>Driving a rental vehicle.</u> The vehicle was properly rented to Love. Apparently, it is common for those delivering drugs to use a rented vehicle. However, this too, standing alone, would be a rather weak indicator of criminal conduct.

6. <u>Volume of luggage.</u> The officer thought the amount of luggage was excessive for a two-day trip. Again, this is a weak connection to possible criminal activity. Speaking from personal experience, I find that every weekend trip my wife and I take involves an excessive amount of luggage.

7. <u>Love had two felony drug convictions.</u> When asked by the officer, Love admitted only to a conviction for a minor drug offense. This fact carries significant weight when we are considering what a police officer would be reasonably suspicious of based on his or her experience and general knowledge. While prior felony convictions are not admissible evidence to prove a

defendant is guilty of the present offense, it cannot be denied that, when a police officer encounters a person in these circumstances who has previously been found guilty twice of a drug offense, it is not unreasonable for the officer to have a suspicion of drug possession. Additionally, here, Love attempted to deceive the officer and minimize his prior drug charges. I believe that the facts that Love (a) was driving a rental vehicle, (b) gave inconsistent information about his destination, and (c) had failed to take the highway leading him to that destination become more relevant when juxtaposed with the fact that he had two prior drug-related convictions. When these four facts are combined, I think it is reasonable for an officer to have a suspicion, based on objective facts, that Love was involved in criminal activity. I do not believe that the facts that he (1) was traveling on Highway 59, (2) was nervous, and (3) had several items of luggage add any strength to the basis for such a reasonable conclusion.

I concur with the opinion of the majority in affirming the judgment of the trial court.

Jack Carter
Justice

Date Submitted: March 11, 2008
Date Decided: April 4, 2008

Publish

12