

## In The
## Court of Appeals
## Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00030-CR
_____

JOSE IGNACIO MONTOY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 114th Judicial District Court
Smith County, Texas
Trial Court No. 114-1285-07

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

After Jose Ignacio Montoy was stopped for traffic violations, the police became suspicious that he may have been in possession of illicit drugs. Those suspicions had merit. After a trial to the court, Montoy was found guilty of possession of more than fifty pounds but less than 200 pounds of marihuana (a second-degree felony) and sentenced to twelve years' imprisonment.

In his appeal of that conviction,[1] Montoy complains that the trial court erred by not suppressing the evidence of the marihuana because he maintains that the detention and search by the arresting officer leading to the discovery of the drugs exceeded the scope of the initial traffic violation. He argues that the evidence obtained by officers conducting a destructive search of his vehicle's contents without having first obtained a search warrant was inadmissible as evidence. He further maintains that the trial court erred by refusing to consider his pretrial motion to suppress until after a trial on the merits had commenced, thereby essentially requiring him to enter a "not guilty" plea in order to have the suppression issue determined. Finally, he posits that the trial court erred by overruling his *Daubert*[2] motion to suppress some of the evidence which led to the discovery of the marihuana which he was found to have possessed. The *Daubert* motion involved the use by the

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]*See Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993) (discussing admissibility of scientific evidence under FED. R. EVID. 702); *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992) (discussing admissibility of scientific evidence under TEX. R. EVID. 702).

officers of a device[3] which is evidently designed to measure the density of materials or objects, a mechanism which officers employed in their search of Montoy's vehicle and about which they testified at the suppression hearing without an understanding of the science employed in its operation.

None of Montoy's points of error involve the actual trial of the case, each being confined to questions concerning the suppression hearing.

Montoy first contends that the trial court erred by overruling his motion to suppress the evidence. He argues that by the time the search took place, so much time had elapsed between the initial stop for the traffic violation and the eventual search, the search exceeded the scope of the initial traffic violation and was, therefore, an unlawful search. He does not argue that traffic violations precipitating the initial traffic stop did not occur. Unlike many of these cases, there is also neither a suggestion that Montoy consented to the search nor was there any testimony that the search of the vehicle was based on a need to inventory the contents of the vehicle. The primary question presented is whether Montoy's detention by the police exceeded its permissible duration and scope before the search commenced.

We review the trial court's decision on a motion to suppress evidence by applying a bifurcated standard of review; that is, we defer to the trial court's determination of historical facts that depend on credibility, but we conduct a de novo review of the trial court's application of the law.

---

[3]Campbell Security Buster K910B Density Meter, a device that uses gamma rays to determine the density of materials.

*Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007); *see Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Generally, we review de novo determinations of probable cause after granting deference to the trial court's determination of historical facts. *Guzman*, 955 S.W.2d at 87.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend. IV. It is well settled in Fourth Amendment jurisprudence that absent a warrant or some functional equivalent giving probable cause to arrest, only a limited, investigatory detention of an individual is permitted. *Burkes v. State*, 830 S.W.2d 922, 925 (Tex. Crim. App. 1991). An investigative detention during the course of a traffic stop during which the subject is not free to leave is a seizure for purposes of the Fourth Amendment and the appellate court must analyze the stop under the reasonableness standard. *Whren v. United States*, 517 U.S. 806, 810 (1996); *Love v. State*, 252 S.W.3d 684, 687 (Tex. App.—Texarkana 2008, pet. ref'd).

Under *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968), the determination of whether an investigative detention is reasonable is a two-pronged inquiry: (1) whether the officer's action was justified at its inception and (2) whether it was reasonably related in scope to the circumstances which justified the initial interference. This determination is a factual one and is made and reviewed by considering the totality of the circumstances existing throughout the detention. *Loesch v. State*, 958 S.W.2d 830, 832 (Tex. Crim. App. 1997).

As we recognized and discussed in our opinion in *Love*, the length of a detention may render a traffic stop unreasonable and there is not an absolute and unbending time line which prescribes

4

when the duration of the stop has become unreasonable. *United States v. Sharpe*, 470 U.S. 675, 679 (1985). In lieu of such an unyielding or bright-line rule, common sense and ordinary human experience must govern over rigid criteria. *Id.* at 685. The reasonableness of the duration of a detention depends on whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions expeditiously, during which time it was necessary to detain the defendant. *Id*. at 686. In determining the reasonableness of the duration of a detention, the trial and appellate courts may consider legitimate law enforcement purposes served by any delay in the officer's investigation. *Id*. at 685. Fourth Amendment reasonableness requires a balance between serving the interest of the public as weighed against the individual's right to be free from arbitrary detentions and intrusions. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004).

**Background**

After he was stopped, Montoy told the officer that he was driving (nonstop) from Arizona to Shreveport, Louisiana, for a job. He was stopped about two hours short of his stated ultimate destination. In reviewing the actions of that afternoon, we note that the parties acknowledge that a valid initial traffic stop (based on the absence of required mud flaps on the truck and the inability to clearly see the dealer tag on the vehicle) occurred.

While in the course of completing actions related to that traffic stop, the officer testified that in continuing the detention, he became suspicious because (a) although Montoy said the vehicle belonged to him, it was registered to another person, (b) the ignition keys were unaccompanied by

5

other keys (such as household keys) attached to the ring, (c) Montoy represented that he had driven the entire distance from Tucson without stopping, (d) although Montoy had said that he was going to Shreveport for heating and cooling work, he had the type of tools ("the stuff in the back of the truck") that did not conform to the kind of work he indicated he was going to perform, (e) his driver's license had been suspended (a situation which Montoy disputed), (f) he failed to tell the truth regarding his past criminal history, (g) Montoy had no proof of insurance, and (h) Montoy's cell phone was lying in the seat with the back off and the battery removed.[4]

The officer testified that a tool box was bolted to the pickup and that the pickup bed had an assortment of cords and hoses thrown on top of some large canisters (of the type to hold pressurized gases) in the back, with a ladder and a jack as well. The canisters or cylinders appeared to have been freshly painted. Although Montoy told the officer that all of the canisters were empty, when the officer picked them up, there was a large discrepancy in weight between the canisters, a fact which led the officer to believe that the heavier canisters were not empty. The canisters were welded shut. While still at the scene of the stop, a constable drilled holes in the canisters, and when the drills were pulled back out, they came out bearing a green leafy material.

---

[4]The officer testified that when phones are disassembled he found it suspicious because it would eliminate the ability for a policeman to obtain numbers and other information from the phone.

**ANALYSIS**

**Continuation of the Traffic Stop**

In looking at the actions that night, we first look to see whether there was evidentiary support justifying a continuation of the traffic stop and allowing it to morph into a different type of stop.

First, was there justification for continuing the stop? The first prong under *Terry* is not at issue: it is clear that the traffic stop was justified at its inception and there is no suggestion that the time of that portion of the stop was unreasonably or inappropriately lengthy. The real question is whether there was justification for a continuation of the stop and then whether that justification was sufficient to support the length of the stop. The officer articulated reasons, as set out above, for his suspicion that some other infraction might be occurring. He then contacted a nearby canine drug search unit to do an open air sniff around the truck. The officer testified that the dog arrived between fifteen and thirty minutes later and alerted around the canisters in the bed of the truck (an act on the part of the dog which indicated that drugs might be present).

This is a short enough delay to not be facially inappropriate, based on reasonable and articulated reasons for extending the stop beyond the length of the pure traffic stop. We conclude that the trial court had evidence before it which would permit it to conclude that the stop was not unconstitutional, and we find no error in its refusal to suppress the evidence on that basis.

**Destructive Search**

Montoy next argues that the evidence should be suppressed because the officers conducted a destructive search without having first obtained a warrant. This argument is based on the uncontroverted evidence that in order to "search" the pressurized gas canisters, they drilled a hole through the side of the canisters. However, the argument made under this issue differs from the premise stated. In his argument, Montoy contends that there was nothing to indicate that an offense had occurred and argues that there is no basis for believing that evidence of the offense might be found in the vehicle. He directs the Court to *Arizona v. Gant*, 129 S.Ct. 1710 (2009), as support for his contention.

*Arizona v. Gant* is the most recent pronouncement by the United States Supreme Court on the concept of a search of an automobile incident to the arrest of its occupants. Although it does limit the State's ability to search a vehicle incident to an arrest based on any reason, it does not purport to disallow all vehicular searches.

> We also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Thornton,* 541 U.S., at 632, 124 S. Ct. 2127, 158 L. Ed. 2d 905 (SCALIA, J., concurring in judgment).

*Id.* at 1719.

As previously pointed out, the drug dog did indicate the presence of drugs in the truck bed, although it could not specify the location. The analysis of *Gant* thus provides no support for the

issue as stated, and also does not assist Montoy in the issue as argued. The contention of error is overruled.

**Lack of Pretrial Suppression Hearing**

Montoy next argues that the trial court committed reversible error by not conducting a pretrial hearing on the suppression issue. He indicates that this course of action placed him in the position of having to make his decision on the entry of his plea without knowing what evidence the State could utilize in its case against him.

This request was not brought before the trial court for decision; therefore, this claim of error has not been clearly preserved for our review. TEX. R. APP. P. 33.1.

Even had it been properly preserved, however, courts have consistently approved the procedure of allowing a trial judge to determine at which point a suppression motion will be heard. As a general rule, Article 28.01 prescribes the pretrial motion practice for criminal cases. TEX. CODE CRIM. PROC. ANN. art. 28.01 (Vernon 2006). Those terms are not mandatory, however, and the question of whether to hold a pretrial hearing on a pretrial motion to suppress evidence is described as resting within the sound discretion of the trial court. *Calloway v. State*, 743 S.W.2d 645, 649 (Tex. Crim. App. 1988); *Morrison v. State*, 71 S.W.3d 821, 825–26 (Tex. App.—Corpus Christi 2002, no pet.); *State v. Reed*, 888 S.W.2d 117, 119 (Tex. App.—San Antonio 1994, no pet.).

The contention of error is overruled.

9

**Application of *Daubert* to Suppression Issues**

Montoy finally argues that the court erred by not granting his *Daubert* motion seeking to address the scientific basis and reliability of a density meter used by police before they decided to drill holes into the canisters. That issue is connected with the motion to suppress. The evidence about the use of the device was one way in which the State sought to show that the officers had a reasonable belief that contraband was inside the canisters.

The controlling rule is Rule 101(d)(1)(A) of the Texas Rules of Evidence, which provides:

These rules, except with respect to privileges, do not apply in the following situations:

(A) the determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under Rule 104.

In turn, Rule 104(a) provides:

Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination the court is not bound by the rules of evidence except those with respect to privileges.

TEX. R. EVID. 104(a).

Because suppression hearings involve the determination of preliminary questions concerning the admissibility of evidence, the language of the current rules indicates that the Rules of Evidence (except privileges) no longer apply to suppression hearings. *Granados v. State*, 85 S.W.3d 217, 227 (Tex. Crim. App. 2002).

The *Daubert* analysis was created and is applied to allow courts to determine which evidence is properly admissible over an objection pursuant to Tex. R. Evid. 702.[5] Accordingly, the proffered evidence falls squarely within the general rule announced in *Granados* and thus was properly before the court for consideration. As a result, it is both unnecessary and inappropriate for us to consider the admissibility of the evidence under the *Daubert* standards. Error has not been shown.

The judgment is affirmed.

Bailey C. Moseley
Justice

Date Submitted:     October 7, 2009
Date Decided:       October 27, 2009

Do Not Publish

---

[5]Under Texas Rule of Evidence 702, the trial court must determine whether proffered scientific expert testimony "is sufficiently reliable and relevant to help the jury in reaching accurate results." *Kelly*, 824 S.W.2d at 572.