02-10-520-CR










 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-10-00520-CR

 

 


 
 
 Diana Sue Wall
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 297th
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

Introduction

          The
trial court denied Appellant Diana Sue Wall’s motion to suppress evidence
seized during and after the police stopped her car.  Appellant reserved her
right to appeal the trial court’s ruling and pleaded guilty to possession of methamphetamine
with intent to deliver.  Now, on appeal, she contends that the trial court
abused its discretion by denying her motion because (1) the police did not have
reasonable suspicion to pull her over or to justify the canine sniff that followed
the stop, (2) the police forced her to consent to a search of her home, and (3)
the taint from these intrusions was not attenuated.  We affirm.

Factual
and Procedural Background

          In
August 2008, Fort Worth narcotics officer Jacob White started receiving information
from several different sources indicating that a white female, who drove a
silver Ford Mustang and who lived near Linkcrest Drive and Interstate 30, was
selling large quantities of methamphetamine on the west side of Fort Worth.  On
August 5, 2009, a confidential source (CS) familiar with the local drug trade pointed
out Appellant’s house on Linklea, which was near Linkcrest Drive in Aledo, to Officer
White and told him that Appellant was a white female who drove a silver Ford
Mustang displaying vanity license plates “L80DI” and that Appellant would be moving
methamphetamine that day from the house to a location near Interstate 30 and
Las Vegas Trail in West Fort Worth.  Officer White and Officer Carolyn Gilmore set
up surveillance near the house and waited for the silver Mustang that was parked
there and that matched the description given by CS to leave.

          After
thirty minutes to an hour, the officers observed Appellant drive the Mustang from
the house and head north on Linkcrest toward Interstate 30.  Officer Gilmore stayed
at the house to continue surveillance while Officer White followed the Mustang
to the intersection of Linkcrest and the freeway access road.  There, the
Mustang turned right without signaling and entered Interstate 30.  Officer
White continued following as the car headed east toward Fort Worth.

          Based
upon the information Officer White had acquired over the past year from
numerous sources indicating that Appellant was dealing drugs and drove a
particular Ford Mustang, and the fact that CS had arranged for Appellant to
deliver drugs to a spot near Las Vegas Trail and the freeway, Officer White
believed that the car he was following contained illegal drugs.  He radioed
ahead to patrol officers and requested that they execute a traffic stop.

          The
patrol officers stopped Appellant on Las Vegas Trail.  Officer White stopped
his car a short distance behind and requested a nearby K-9 unit.  K-9 Officer Harold
Cussnick and his drug detection dog “Kelev” arrived approximately ten minutes
later.

          Kelev
had been trained to alert when he detected the odor of illegal narcotics; when
Officer Cussnick brought him near Appellant’s car, the dog alerted aggressively,
nearly jumping through the open window on the driver’s side.  Officer Cussnick
opened the car door and let Kelev inside, where he alerted to a purse resting on
the right front passenger seat.  One of the patrol officers removed the purse and
set it on the ground behind the car, and when Officer Cussnick deployed the dog
nearby, Kelev alerted very aggressively, swiping at the purse and trying to
knock it away from the car.  Officer White then opened the purse and found
manila envelopes containing narcotics.

          Officer
White asked Appellant where she lived; she said, “3924 Linklea,” confirming the
address provided by CS.  Officer White asked whether Appellant would consent to
a search of her home.  She said she would.

          One
of the patrol officers took Appellant back to her home.  Officer Gilmore and another
officer were already there, talking with Appellant’s husband.  When Officer
White arrived, he presented Appellant and her husband a consent-to-search form,
which Appellant signed.

          Appellant
then led the officers to a back bedroom in the house and indicated that there
were narcotics there.  In the room, Officer White discovered multiple bags
containing a white crystalline substance, manila envelopes similar to those
found in Appellant’s purse at the stop, and a green leafy substance.  After
receiving her statutory warnings, Appellant gave a written statement, admitting
possession of “the white and green, ice and weed.”

          The
State charged Appellant with possession of methamphetamine with intent to deliver. 
Appellant filed a pretrial motion to suppress, which the trial court denied
after a hearing.  Appellant reserved her right to appeal the trial court’s
ruling and entered an open plea of guilty.  The trial court accepted her plea
and sentenced her to eight years’ confinement.

          On
appeal, Appellant brings a single point made up of three sub-points, contending
that the trial court abused its discretion by denying her pretrial motion to
suppress.

Standard
of Review

          We
review a trial court’s ruling on a motion to suppress evidence under a
bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court’s decision, we do not engage in our
own factual review.  Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim.
App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth
2003, no pet.).  The trial judge is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); State v. Ross,
32 S.W.3d 853, 855 (Tex. Crim. App. 2000), modified on other grounds by
State v. Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006).  Therefore, we give
almost total deference to the trial court’s rulings on (1) questions of
historical fact, even if the trial court’s determination of those facts was not
based on an evaluation of credibility and demeanor, and
(2) application-of-law-to-fact questions that turn on an evaluation of
credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez v.
State, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); Johnson v. State,
68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

          Stated
another way, when reviewing the trial court’s ruling on a motion to suppress,
we must view the evidence in the light most favorable to the trial court’s
ruling.  Wiede, 214 S.W.3d at 24; State v. Kelly, 204 S.W.3d 808,
818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact findings,
we determine whether the evidence, when viewed in the light most favorable to
the trial court’s ruling, supports those fact findings.  Kelly, 204
S.W.3d at 818–19.  We then review the trial court’s legal ruling de novo
unless its explicit fact findings that are supported by the record are also
dispositive of the legal ruling.  Id. at 818.

          We
must uphold the trial court’s ruling if it is supported by the record and
correct under any theory of law applicable to the case even if the trial court
gave the wrong reason for its ruling.  State v. Stevens, 235 S.W.3d 736,
740 (Tex. Crim. App. 2007); Armendariz v. State, 123 S.W.3d 401, 404
(Tex. Crim. App. 2003), cert. denied, 541 U.S. 974 (2004).

Reasonable
Suspicion for the Stop

          In
sub-point (a), Appellant contends that the police lacked reasonable suspicion
to justify the traffic stop.

          A
detention, as opposed to an arrest, may be justified on less than probable
cause if a person is reasonably suspected of criminal activity based on
specific, articulable facts.  Terry v. Ohio, 392 U.S. 1, 21, 88
S. Ct. 1868, 1880 (1968); Carmouche v. State, 10 S.W.3d 323, 328
(Tex. Crim. App. 2000).  An officer conducts a lawful temporary detention when
he or she has reasonable suspicion to believe that an individual is violating
the law.  Crain v. State, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); Ford
v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  Reasonable suspicion
exists when, based on the totality of the circumstances, the officer has
specific, articulable facts that when combined with rational inferences from
those facts, would lead him to reasonably conclude that a particular person is,
has been, or soon will be engaged in criminal activity.  Ford, 158
S.W.3d at 492.  This is an objective standard that disregards any subjective
intent of the officer making the stop and looks solely to whether an objective
basis for the stop exists.  Id.

          Appellant
devotes much of her argument to her contention that the stop was unjustified
because the record is insufficient to show that Appellant committed a traffic
offense.  Viewed under the appropriate standard of review, however, the record
supports the trial court’s finding that Appellant committed a traffic violation
by failing to signal a turn at the intersection to the access road.  Officer
White testified that Appellant could have continued on Linkcrest and gone under
the overpass but that she turned at the intersection instead.  He further
testified that a driver commits a traffic violation by failing to signal an
intention to turn at least 100 feet before entering an intersection.[2] 
And although Appellant argues in her brief that she committed no traffic
violation because a turn signal was unnecessary at that particular location, in
response to questioning posed by her counsel at the hearing she testified that
she used a turn signal:

          Q.
Did you signal at the turn onto the service road?

          A. 
Yes.

          Q. 
And do you have any question in your mind about that?

          A. 
No.

          The
trial court resolved this factual dispute against Appellant.  Because we are
not in a better position than the trial court to assess factual issues that
turn on determinations of credibility and demeanor, and because the record
supports the trial court’s finding that Appellant committed a traffic
violation, we defer to the trial court’s resolution of this issue.

          Moreover,
because the officers had reasonable suspicion to believe Appellant was
delivering drugs in her car, in addition to having reasonable suspicion to
justify the traffic stop, they were also justified in detaining her for the
short time it took to summon the drug dog after the stop.  See Florida v.
Royer, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325–26 (1983); Love v. State,
252 S.W.3d 684, 688 (Tex. App.—Texarkana 2008, pet. ref’d); Strauss v. State,
121 S.W.3d 486, 492 (Tex. App.—Amarillo 2003, pet. ref’d).

          The
officers reasonably suspected that Appellant was delivering drugs in her car
because (1) Officer White had received information from numerous sources over
the previous year that Appellant drove a silver Mustang with a specific vanity
license plate and that she had been selling methamphetamine on the west side of
Fort Worth; (2) CS, who was familiar with the local drug trade, pointed out
Appellant’s home and told Officer White that on that day Appellant would
deliver a quantity of methamphetamine to CS at a specified location in West
Fort Worth; and (3) Officer White observed Appellant’s car––a silver Mustang
with vanity plates––drive toward the location where the drug transaction was to
take place.  Because we hold that this information is sufficient to show that
Officer White had reasonable suspicion to detain Appellant, we overrule sub-point
(a).

Consent
to Search

          In
sub-point (b), Appellant contends that her consent to search was invalid
because the police obtained it by coercion.  Officer White testified that
Appellant orally consented to a search of her home after she was pulled over at
the traffic stop and that she later signed a written consent form when they
returned to her house.  Officer White further testified that Appellant received
the proper warnings and that her consent was voluntary and not induced by
coercion.  Appellant testified to the contrary.  The trial court expressly
found that Appellant voluntarily consented to the search.  This is an issue of
witness credibility that, under the appropriate standard of review, is properly
left to the trial court’s discretion.  See Wiede, 214 S.W.3d at 24–25.  Because
the record supports the trial court’s finding, there is no abuse of
discretion.  Accordingly, we overrule subpoint (b).

          In
her third sub-point, Appellant contends that the taint from the government’s
intrusions was not attenuated.  Because we have held that the police actions in
this case were proper, this sub-point is without merit and is overruled.

Conclusion

          Having
overruled Appellant’s sole point, we affirm the judgment of the trial court.

 

 

 

LEE GABRIEL

JUSTICE

 

PANEL: 
WALKER,
MEIER, and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  February 16,
2012









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Transp.
Code Ann. § 545.104(b) (West 2011).