

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00520-CR

DIANA SUE WALL                                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

## FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

The trial court denied Appellant Diana Sue Wall's motion to suppress evidence seized during and after the police stopped her car. Appellant reserved her right to appeal the trial court's ruling and pleaded guilty to possession of methamphetamine with intent to deliver. Now, on appeal, she contends that the

---

[1]*See* Tex. R. App. P. 47.4.

trial court abused its discretion by denying her motion because (1) the police did not have reasonable suspicion to pull her over or to justify the canine sniff that followed the stop, (2) the police forced her to consent to a search of her home, and (3) the taint from these intrusions was not attenuated. We affirm.

**Factual and Procedural Background**

In August 2008, Fort Worth narcotics officer Jacob White started receiving information from several different sources indicating that a white female, who drove a silver Ford Mustang and who lived near Linkcrest Drive and Interstate 30, was selling large quantities of methamphetamine on the west side of Fort Worth. On August 5, 2009, a confidential source (CS) familiar with the local drug trade pointed out Appellant's house on Linklea, which was near Linkcrest Drive in Aledo, to Officer White and told him that Appellant was a white female who drove a silver Ford Mustang displaying vanity license plates "L80DI" and that Appellant would be moving methamphetamine that day from the house to a location near Interstate 30 and Las Vegas Trail in West Fort Worth. Officer White and Officer Carolyn Gilmore set up surveillance near the house and waited for the silver Mustang that was parked there and that matched the description given by CS to leave.

After thirty minutes to an hour, the officers observed Appellant drive the Mustang from the house and head north on Linkcrest toward Interstate 30. Officer Gilmore stayed at the house to continue surveillance while Officer White

2

followed the Mustang to the intersection of Linkcrest and the freeway access road. There, the Mustang turned right without signaling and entered Interstate 30. Officer White continued following as the car headed east toward Fort Worth.

Based upon the information Officer White had acquired over the past year from numerous sources indicating that Appellant was dealing drugs and drove a particular Ford Mustang, and the fact that CS had arranged for Appellant to deliver drugs to a spot near Las Vegas Trail and the freeway, Officer White believed that the car he was following contained illegal drugs. He radioed ahead to patrol officers and requested that they execute a traffic stop.

The patrol officers stopped Appellant on Las Vegas Trail. Officer White stopped his car a short distance behind and requested a nearby K-9 unit. K-9 Officer Harold Cussnick and his drug detection dog "Kelev" arrived approximately ten minutes later.

Kelev had been trained to alert when he detected the odor of illegal narcotics; when Officer Cussnick brought him near Appellant's car, the dog alerted aggressively, nearly jumping through the open window on the driver's side. Officer Cussnick opened the car door and let Kelev inside, where he alerted to a purse resting on the right front passenger seat. One of the patrol officers removed the purse and set it on the ground behind the car, and when Officer Cussnick deployed the dog nearby, Kelev alerted very aggressively,

swiping at the purse and trying to knock it away from the car. Officer White then opened the purse and found manila envelopes containing narcotics.

Officer White asked Appellant where she lived; she said, "3924 Linklea," confirming the address provided by CS. Officer White asked whether Appellant would consent to a search of her home. She said she would.

One of the patrol officers took Appellant back to her home. Officer Gilmore and another officer were already there, talking with Appellant's husband. When Officer White arrived, he presented Appellant and her husband a consent-to-search form, which Appellant signed.

Appellant then led the officers to a back bedroom in the house and indicated that there were narcotics there. In the room, Officer White discovered multiple bags containing a white crystalline substance, manila envelopes similar to those found in Appellant's purse at the stop, and a green leafy substance. After receiving her statutory warnings, Appellant gave a written statement, admitting possession of "the white and green, ice and weed."

The State charged Appellant with possession of methamphetamine with intent to deliver. Appellant filed a pretrial motion to suppress, which the trial court denied after a hearing. Appellant reserved her right to appeal the trial court's ruling and entered an open plea of guilty. The trial court accepted her plea and sentenced her to eight years' confinement.

On appeal, Appellant brings a single point made up of three sub-points, contending that the trial court abused its discretion by denying her pretrial motion to suppress.

## Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

**Reasonable Suspicion for the Stop**

In sub-point (a), Appellant contends that the police lacked reasonable suspicion to justify the traffic stop.

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). An

officer conducts a lawful temporary detention when he or she has reasonable suspicion to believe that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492. This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id.*

Appellant devotes much of her argument to her contention that the stop was unjustified because the record is insufficient to show that Appellant committed a traffic offense. Viewed under the appropriate standard of review, however, the record supports the trial court's finding that Appellant committed a traffic violation by failing to signal a turn at the intersection to the access road. Officer White testified that Appellant could have continued on Linkcrest and gone under the overpass but that she turned at the intersection instead. He further testified that a driver commits a traffic violation by failing to signal an intention to turn at least 100 feet before entering an intersection.[2] And although Appellant argues in her brief that she committed no traffic violation because a turn signal

---

[2]*See* Tex. Transp. Code Ann. § 545.104(b) (West 2011).

7

was unnecessary at that particular location, in response to questioning posed by her counsel at the hearing she testified that she used a turn signal:

Q. Did you signal at the turn onto the service road?

A. Yes.

Q. And do you have any question in your mind about that?

A. No.

The trial court resolved this factual dispute against Appellant. Because we are not in a better position than the trial court to assess factual issues that turn on determinations of credibility and demeanor, and because the record supports the trial court's finding that Appellant committed a traffic violation, we defer to the trial court's resolution of this issue.

Moreover, because the officers had reasonable suspicion to believe Appellant was delivering drugs in her car, in addition to having reasonable suspicion to justify the traffic stop, they were also justified in detaining her for the short time it took to summon the drug dog after the stop. *See Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325–26 (1983); *Love v. State*, 252 S.W.3d 684, 688 (Tex. App.—Texarkana 2008, pet. ref'd); *Strauss v. State*, 121 S.W.3d 486, 492 (Tex. App.—Amarillo 2003, pet. ref'd).

The officers reasonably suspected that Appellant was delivering drugs in her car because (1) Officer White had received information from numerous sources over the previous year that Appellant drove a silver Mustang with a

specific vanity license plate and that she had been selling methamphetamine on the west side of Fort Worth; (2) CS, who was familiar with the local drug trade, pointed out Appellant's home and told Officer White that on that day Appellant would deliver a quantity of methamphetamine to CS at a specified location in West Fort Worth; and (3) Officer White observed Appellant's car—a silver Mustang with vanity plates—drive toward the location where the drug transaction was to take place. Because we hold that this information is sufficient to show that Officer White had reasonable suspicion to detain Appellant, we overrule sub-point (a).

### Consent to Search

In sub-point (b), Appellant contends that her consent to search was invalid because the police obtained it by coercion. Officer White testified that Appellant orally consented to a search of her home after she was pulled over at the traffic stop and that she later signed a written consent form when they returned to her house. Officer White further testified that Appellant received the proper warnings and that her consent was voluntary and not induced by coercion. Appellant testified to the contrary. The trial court expressly found that Appellant voluntarily consented to the search. This is an issue of witness credibility that, under the appropriate standard of review, is properly left to the trial court's discretion. *See Wiede*, 214 S.W.3d at 24–25. Because the record supports the trial court's finding, there is no abuse of discretion. Accordingly, we overrule subpoint (b).

9

In her third sub-point, Appellant contends that the taint from the government's intrusions was not attenuated. Because we have held that the police actions in this case were proper, this sub-point is without merit and is overruled.

## Conclusion

Having overruled Appellant's sole point, we affirm the judgment of the trial court.

LEE GABRIEL
JUSTICE

PANEL:  WALKER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 16, 2012