**Opinion filed June 18, 2015**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-13-00284-CR & 11-13-00285-CR

_____

## MARC SHAWN WALDEN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause Nos. CR21838 & CR21977**

### M E M O R A N D U M   O P I N I O N

The jury found Marc Shawn Walden guilty of the offenses of unlawful possession of a firearm and possession of a controlled substance with intent to deliver.[1] The trial court assessed punishment and sentenced Appellant to confinement for ten years for the conviction of unlawful possession of a firearm and confinement for life for the conviction of possession of a controlled substance

---

[1]*See* TEX. PENAL CODE ANN. § 46.04 (West 2011); TEX. HEALTH & SAFETY CODE ANN. § 481.112 (West 2010).

with intent to deliver, to run concurrently, and it assessed a $10,000 fine for each conviction. In his sole issue in each appeal, Appellant asserts that the trial court erred when it denied his motion to suppress evidence. We affirm.

## I. *Evidence at Suppression Hearing*

Carlyle Gover, an investigator with the Brown County Sheriff's Office, testified that a confidential informant told him that Appellant had a quantity of methamphetamine for distribution. Investigator Gover believed the informant to be reliable because of successful past dealings with the informant. Investigator Gover heard from the confidential informant that Appellant would be traveling from San Angelo in a red pickup to a specific location in Brown County. Investigator Gover relayed the information to patrol officers, who later advised him that the red pickup, which was registered to Appellant, was at that specific location. The next day, Investigator Gover went to the location and saw the pickup.

After he observed the pickup, Investigator Gover contacted the informant, who told him that Appellant had relocated and that Christopher Johnson, whom Investigator Gover knew to be a narcotics user, was also involved with Appellant's distribution. Investigator Gover was familiar with the second location and knew that a probationer lived there. Investigator Gover testified that Appellant's activities were consistent with narcotics trafficking. Investigator Gover conducted surveillance at the second location and saw someone drive up in a cargo box van. Based on his past experience, Investigator Gover believed that the van belonged to Johnson.

Investigator Gover followed the van, which was later determined to be driven by Johnson. He observed the van at the first location, near the red pickup; and saw Appellant at the first location. Investigator Gover watched Appellant get out of the pickup and get into the van. Appellant retrieved a backpack from the

pickup before entering the van. Investigator Gover watched as the van was driven away, and he continued to follow it. Investigator Gover noticed the license plate on the van was bent in such a way that the first digit of the license plate was unreadable. Because the license plate number was not readable, Investigator Gover could not run the partial license plate number through dispatch and receive a proper response. When Investigator Gover noticed that he could not read the license plate, he initiated a stop of the van. After he stopped the van, Investigator Gover was able to read the complete license plate number; he subsequently contacted the occupants of the van.

When he contacted the occupants of the van, Investigator Gover recognized Appellant and knew that Appellant had a history of distribution of methamphetamine and marihuana. Investigator Gover testified that, at that point in time, based on the information he had received from the informant, on his knowledge of Appellant and Johnson, and on his observations of them, he was concerned that illegal activity was occurring. Investigator Gover talked with Johnson and Appellant and asked to search the vehicle and the backpack; Johnson declined to allow a search of the vehicle, while Appellant declined to allow a search of the backpack.

Investigator Gover immediately requested a canine unit. It took somewhere between five and "less than fifteen minutes" for the unit to arrive. While Investigator Gover waited for the canine to arrive, he looked to see what he could observe in plain view in the van. Investigator Gover saw the backpack that Appellant had transferred from the pickup to the van. Investigator Gover asked Appellant whether the backpack contained anything illegal. Appellant responded that it did not contain anything that he considered to be illegal. Investigator Gover testified that Appellant's response made him even more suspicious of illegal activity. Amanda Benson, the canine officer, arrived with the canine, and the

3

canine alerted to narcotics at the driver's door of the van. The canine subsequently alerted on the backpack. After the canine alerted on the backpack, Investigator Gover discovered methamphetamine and a stolen handgun in the backpack. Investigator Gover subsequently arrested Appellant and Johnson.

## II. *Analysis*

Appellant argues that the trial court erred when it denied his motion to suppress evidence because Investigator Gover lacked probable cause for the traffic stop. Appellant asserts that a bent license plate does not violate the Transportation Code and that, once Investigator Gover satisfied his initial justification for the stop, any further detention was unlawful. We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). We must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We defer to the trial court's findings of historical facts and review de novo the trial court's application of the law. *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007).

A traffic stop is a seizure and must be reasonable under both the United States and Texas Constitutions. *Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997). "There need only be an objective basis for the stop; the subjective intent of the officer conducting the stop is irrelevant." *State v. Clark*, 315 S.W.3d 561, 564 (Tex. App.—Eastland 2010, no pet.); *see also Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). An actual traffic violation constitutes probable cause that sufficiently justifies the initial detention. *McVickers v. State*, 874 S.W.2d 662, 664 (Tex. Crim. App. 1993), *superseded by rule on other grounds as stated in Granados v. State*, 85 S.W.3d 217, 227–30 (Tex. Crim. App. 2002).

The duration of the detention is reasonable when, under the totality of the circumstances, it lasts no longer than is necessary to effectuate the purpose for the

stop.  *Ohio v. Robinette*, 519 U.S. 33, 39 (1996); *Florida v. Royer*, 460 U.S. 491, 500 (1983).  During a traffic stop, an officer has the right to ask for a valid driver's license, information concerning ownership of the vehicle, proof of insurance, and information concerning the driver's destination and purpose.  *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004); *Davis*, 947 S.W.2d at 245 n.6; *Caraway v. State*, 255 S.W.3d 302, 307 (Tex. App.—Eastland 2008, no pet.); *Lambeth v. State*, 221 S.W.3d 831, 836 (Tex. App.—Fort Worth 2007, pet. ref'd).  The reasonableness of the duration of the stop depends on whether it was necessary to detain the defendant and whether the officer diligently pursued a means of investigation likely to quickly confirm or dispel any suspicion.  *Love v. State*, 252 S.W.3d 684, 687 (Tex. App.—Texarkana 2008, pet. ref'd); *Belcher v. State*, 244 S.W.3d 531, 539 (Tex. App.—Fort Worth 2007, no pet.).

To validly prolong a detention beyond the reason for the stop, officers must have reasonable suspicion to believe the person is violating the law, but no additional justification is necessary for a canine sniff that occurs during a lawful traffic stop.  *1979 Pontiac Auto. v. State*, 988 S.W.2d 241, 244 (Tex. App.—Eastland 1998, no pet.); *see also Illinois v. Caballes*, 543 U.S. 405, 407–08 (2005); *United States v. Place*, 462 U.S. 696, 707 (1983); *Crockett v. State*, 803 S.W.2d 308, 310 n.5, 311 (Tex. Crim. App. 1991).  Reasonable suspicion to detain exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him reasonably to conclude that the person is, has been, or soon will be engaged in criminal activity.  *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011).  We consider the totality of the circumstances when reviewing the record for reasonable suspicion.  *United States v. Sokolow*, 490 U.S. 1, 8 (1989); *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997).

The Texas Transportation Code requires that license plates be legible. *See* TEX. TRANSP. CODE ANN. § 504.945 (West Supp. 2014). When Investigator Gover could not read the first digit on Johnson's license plate, he had probable cause to stop and detain Johnson and Appellant for a traffic violation. *See id.*; *McVickers*, 874 S.W.2d at 664; *see also, e.g.*, *Perez v. State*, No. 10-05-00364-CR, 2006 WL 2507343, at *2 (Tex. App.—Waco Aug. 30, 2006, no pet.) (mem. op., not designated for publication) (holding that officer had probable cause to stop and detain defendant because of apparently defective license-plate light and obscured license plate).

Once the reason for the traffic stop had been fully resolved, Investigator Gover needed reasonable suspicion that criminal activity had occurred, was occurring, or was about to occur, before he could detain Johnson and Appellant further. *See Derichsweiler*, 348 S.W.3d at 914; *see also Place*, 462 U.S. at 709–10. The detention, to be reasonable, required Investigator Gover to diligently pursue a means of investigation likely to quickly confirm or dispel any suspicion. *See Love*, 252 S.W.3d at 687; *Belcher*, 244 S.W.3d at 539.

Investigator Gover's observations of Johnson and Appellant, his knowledge of Johnson and Appellant's history, and the information obtained from the confidential informant provided articulable facts that could have led Investigator Gover to reasonably conclude that Johnson and Appellant were engaged in criminal activity. *See Derichsweiler*, 348 S.W.3d at 914.

Investigator Gover first asked for consent to search the van, which was denied; he then called for the canine, which arrived in less than fifteen minutes. The canine subsequently alerted to narcotics in the van and the backpack. The length of the detention was reasonable because Investigator Gover acted diligently, because he had to detain Johnson and Appellant in order to confirm or dispel his suspicion, and because the canine arrived promptly. *See Love*, 252 S.W.3d at

687; *Belcher*, 244 S.W.3d at 539; *see also Place*, 462 U.S. at 709–10.  Investigator Gover properly detained Johnson and Appellant.  *See 1979 Pontiac Auto.*, 988 S.W.2d at 244.  Therefore, the trial court did not abuse its discretion when it denied Appellant's motion to suppress evidence.  *See Balentine*, 71 S.W.3d at 768.  We overrule Appellant's sole issue in each appeal.

III. <em>This Court's Ruling</em>

We affirm the judgments of the trial court.

MIKE WILLSON

JUSTICE

June 18, 2015

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.