In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-24-00026-CR
_____

LINDA STOKES, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

**On Appeal from the 260th District Court**
**Orange County, Texas**
**Trial Cause No. D230309-R**

_____

**MEMORANDUM OPINION**

Appellant Linda Stokes appeals her conviction for possession of a controlled substance, a second-degree felony. *See* Tex. Health & Safety Code Ann. § 481.115(d). In her sole issue, Stokes complains the trial court abused its discretion by denying her Motion to Suppress her confession and the results of a warrantless search and seizure. We affirm the trial court's judgment.

1

# BACKGROUND

A grand jury indicted Stokes for possession of a controlled substance, namely methamphetamine. *See id.* Stokes filed a Motion to Suppress Statement/Confession, arguing she did not receive her *Miranda* or statutory warnings before giving her statement that was a product of a custodial interrogation. Stokes also complained her confession was involuntary, coerced, and obtained in violation of her state and federal constitutional rights. Stokes filed a second Motion to Suppress, in which she argued the State conducted a warrantless search and seizure in violation of her state and federal constitutional rights and obtained evidence from illegal law enforcement activity. Stokes argued the evidence seized from the illegal search and seizure should be suppressed under article 38.23 of the Texas Code of Criminal Procedure.

The trial court conducted a suppression hearing. Sergeant Jason Laughlin, who is assigned to the narcotics division of the City of Orange Police Department, testified that he observed Stokes exhibit suspicious activity at a store known for narcotics activity. Laughlin followed and stopped Stokes for several traffic violations, including leaving the roadway and driving on the improved shoulder and in another lane of traffic multiple times in an unsafe manner. Laughlin explained he drove an unmarked vehicle that did not have a dash camera and only wore a body camera. The trial court admitted Laughlin's body camera video of the stop.

Laughlin testified that during the stop, he asked Stokes to exit her vehicle for safety purposes, and he testified that Stokes was shaking and nervous. Laughlin asked Stokes whether she was under the influence of anything because she was swerving on the roadway, and Stokes stated she was not. Laughlin testified that he detained Stokes for a traffic stop but due to Stokes's nervousness, he asked for her consent to search her vehicle, and the video shows Stokes gave him consent. Laughlin searched the vehicle and found a pipe that he recognized was used to smoke methamphetamines. At that point, Laughlin believed he had probable cause to continue his search.

Laughlin explained that when he asked Stokes if she had methamphetamines in her vehicle, Stokes informed him she was not sure but that there may be some in her purse. Laughlin continued his investigation and search, which resulted in him finding a gallon-size bag containing a large amount of crystal-like substance that he believed to be methamphetamines. At that point, Laughlin arrested Stokes for possession. Laughlin testified that Stokes never withdrew her consent to the search.

On cross-examination, Laughlin testified that he stopped Stokes for failing to maintain a single lane of traffic and did not know whether she was impaired. Laughlin explained that Stokes's failure to maintain a single lane was dangerous and had the ability to impede other drivers. Laughlin testified he ran Stokes's license plate, which was clear, before he initiated the stop, and he ran her driver's license

3

when she exited her vehicle. Based on Stokes's driving, Laughlin asked Stokes whether she had been drinking or using drugs to determine whether she was intoxicated, and he stated there was not probable cause for DWI. Laughlin explained he continued the detention after Stokes's driver's license came back clear and asked for consent to search her vehicle because he wanted to check for narcotics. Laughlin testified Stokes gave her consent to search the vehicle after her driver's license returned clear. Laughlin explained that he continued to talk to Stokes after arresting her despite not reading her the *Miranda* warnings, but she never gave a statement.

The trial court granted Stokes's Motion to Suppress Statements, suppressing any statement she made after Laughlin arrested her. The trial court found that Laughlin had reasonable suspicion to stop Laughlin for violating the Transportation Code and possible DWI. The trial court found that Stokes consented to the search and never withdrew her consent. The trial court denied Stokes's Motion to Suppress and found all the evidence was admissible.

Stokes pleaded guilty without an agreed punishment recommendation. The trial court accepted Stokes's plea, deferred finding Stokes guilty, placed Stokes on community supervision for ten years, assessed a $5,000 fine, and ordered her to attend an inpatient drug rehabilitation program.

# ANALYSIS

In her sole issue, Stokes complains the trial court abused its discretion by denying her Motion to Suppress. Stokes argues that Laughlin's stop was illegal because the evidence does not support that she committed a traffic violation by failing to maintain a single lane or that Laughlin had reasonable suspicion that she was driving while intoxicated. Stokes contends Laughlin exceeded the scope of the stop and created an unreasonable and illegal detention. Stokes also argues her voluntary consent to the search was tainted by the illegal stop and detention.

"We review a trial court's ruling on a motion to suppress using a bifurcated standard for an abuse of discretion." *State v. Espinosa*, 666 S.W.3d 659, 667 (Tex. Crim. App. 2023). "We defer to a trial court's findings of fact that are supported by the record." *Id.* We review de novo legal questions and mixed questions that do not turn on credibility and demeanor, such as the facts of a case that would establish probable cause. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). The evidence and all reasonable inferences are viewed in the light most favorable to the trial court's ruling, and the trial court's ruling must be upheld if it is reasonably supported by the record and is correct under a theory of law applicable to the case. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).

*Reasonable Suspicion*

First, Stokes argues Laughlin lacked reasonable suspicion to stop her because failing to maintain a single lane in a safe manner is legal. *See* Tex. Transp. Code Ann. § 545.060; *Daniel v. State*, 683 S.W.3d 777, 780-81 (Tex. Crim. App. 2024).[1] According to Stokes, Laughlin did not testify that the lane change was unsafe but only that it could be potentially dangerous. Stokes also argues her weaving alone did not give Lauglin reasonable suspicion to stop her for suspected intoxication.

A warrantless traffic stop is analogous to a temporary detention, and it may be justified when the officer has "reasonable suspicion." *State v. Hardin*, 664 S.W.3d 867, 872 (Tex. Crim. App. 2022) (citing *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011)). For a traffic stop to comply with the Fourth Amendment, an officer must have "'reasonable suspicion.'" *Hamal v. State*, 390

---

[1] Although Stokes argues that failing to maintain a single lane in a safe manner is legal, Laughlin testified that Stokes did so in an unsafe manner. We note that the Texas Court of Criminal Appeals resolved a split in authority on the interpretation of whether section 545.060 of the Texas Transportation Code creates two offenses and concluded it established one offense. *See Daniel v. State*, 638 S.W.3d 777, 779-83 (Tex. Crim. App. 2024) (citing *State v. Hardin*, 664 S.W.3d 867 (Tex. Crim. App. 2022)). Like this case, in *Dixon v. State*, we concluded that a stop for failing to maintain a single lane was valid when an officer testified that the defendant's weaving was unsafe. *See* No. 09-00-168 CR, 2001 WL 1636307, at **2-3 (Tex. App.—Beaumont Dec. 19, 2001, pet. ref'd) (mem. op., not designated for publication); *cf. Ehrhart v. State*, 9 S.W.3d 929, 930-31 (Tex. App.—Beaumont 2000, no pet.) (concluding defendant did not fail to maintain a single lane because there was no testimony defendant's weaving was unsafe or dangerous).

S.W.3d 302, 306 (Tex. Crim. App. 2012) (citing *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011)). "Under the Fourth Amendment, 'reasonable suspicion' exists when an officer is aware of 'specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity.'" *York*, 342 S.W.3d at 536 (quoting *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)) (other citation omitted). The reasonable suspicion standard is objective, and the officer's subjective intent is irrelevant. *Id.* This standard merely requires "'some minimal level of objective justification'" for the stop. *Hamal*, 390 S.W.3d at 306 (quoting *Foster v. State*, 326 S.W.3d 609, 614 (Tex. Crim. App. 2010)).

"[A] law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further." *Hiibel v. Sixth Jud. Dist. Ct. of Nev.*, 542 U.S. 177, 185 (2004). Reasonable suspicion requires more than a hunch, and it exists if the officer has specific articulable facts that, combined with rational inferences from those facts, would lead the officer to reasonably conclude the person is, has been, or soon will be engaged in criminal activity. *Hardin*, 664 S.W.3d at 872 (citing *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007)); *Delafuente v. State*, 414 S.W.3d 173, 177 (Tex. Crim. App. 2013). These facts must show unusual activity, some evidence that connects the detainee to the unusual activity, and some

7

indication that the unusual activity is related to a crime. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013) (citing *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011)). If an officer has a reasonable basis for suspecting a person committed a traffic offense, he may legally initiate a traffic stop. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992); *Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.—Texarkana 2010, pet. ref'd) (citation omitted).

Laughlin testified that he observed Stokes exhibit suspicious activity at a store known for narcotics activity and fail to maintain a single lane of traffic, which was dangerous and had the ability to impede other drivers. *See* Tex. Transp. Code Ann. § 545.060. Laughlin also explained that because Stokes was swerving on the roadway, he investigated whether she was intoxicated. Considering the totality of the circumstances, we hold that Laughlin provided a reasonable suspicion sufficient to justify his stop and detention of Stokes, including observing Stokes commit a traffic violation that was unsafe and explaining the specific articulable facts that, combined with rational inferences from those facts, led him to reasonably conclude Stokes had been or was or would soon be engaged in criminal activity. *See Guerra v. State*, 432 S.W.3d 905, 912 (Tex. Crim. App. 2014); *Garcia*, 827 S.W.2d at 944; *Dixon v. State*, No. 09-00-168 CR, 2001 WL 1636307, at **2-3 (Tex. App.—Beaumont Dec. 19, 2001, pet. ref'd) (mem. op., not designated for publication).

*Prolonged Detention*

Stokes complains Laughlin detained her beyond the scope of the initial stop and should have allowed her to leave after he resolved the purpose of the stop rather than investigating unrelated criminal activity and searching her vehicle without reasonable suspicion that she was involved in drug trafficking.

Under the Fourth Amendment, a person can be detained no longer than is necessary to effectuate the purpose of a valid traffic stop. *See Florida v. Royer*, 460 U.S. 491, 500 (1983). In investigating a traffic violation, an officer is to use the least intrusive means reasonably available to the officer to verify or dispel the suspicion that led to the stop. *Id.* Thus, the reasonableness of the duration of a stop does not depend solely on the time needed to determine whether a traffic offense occurred. *See Love v. State*, 252 S.W.3d 684, 687 (Tex. App.—Texarkana 2008, pet. ref'd).

In gathering the types of information typically associated with a traffic stop, an objectively reasonable officer may form a reasonable suspicion that some crime other than a traffic violation is afoot. *United States v. Sharpe*, 470 U.S. 675, 685-86 (1985). If so, the focus in determining whether the detention is prolonged shifts to evaluating whether those suspicions were objectively reasonable, and whether they were investigated in a manner designed to quickly confirm or dispel them. *Belcher v. State*, 244 S.W.3d 531, 539 (Tex. App.—Fort Worth 2007, no pet.). In evaluating a complaint about an allegedly prolonged detention, courts are allowed to consider

whether legitimate law enforcement purposes are served by any delays that arose during the investigation. *Id.* In reviewing complaints about allegedly prolonged detentions, we look at the totality of the circumstances developed during the stop to determine whether there is evidence in the record supporting the trial court's conclusion that reasonable suspicions existed justifying the defendant's detention while the officer investigated matters that extended beyond the initial reason for the stop. *See United States v. Sokolow*, 490 U.S. 1, 8-9 (1989); *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). Although a detention that follows a traffic stop may become unduly prolonged, there is no rigid, bright-line rule governing the time that detentions should take. *Sharpe*, 470 U.S. at 685.

Here, Laughlin pointed to various facts indicating why he decided to further investigate his suspicion that Stokes might have narcotics. *See Derichsweiler*, 348 S.W.3d at 914; *see also United States v. Place*, 462 U.S. 696, 709-10 (1983). Laughlin explained he continued the detention after Stokes's driver's license came back clear and asked for consent to search Stokes's vehicle because he wanted to check for narcotics. For example, Laughlin explained that Stokes exhibited suspicious activity at a store known for narcotics activity, left the roadway multiple times in an unsafe manner, and was nervous and shaking during the stop. Considering the totality of the circumstances developed during the stop, the trial court could have reasonably concluded that Laughlin developed objectively

10

reasonable information at each step of his investigation to continue to investigate his suspicion that Stokes had narcotics even after the initial purpose of the stop ended. *See Sokolow*, 490 U.S. at 8-9; *Love*, 252 S.W.3d at 687.

We also consider whether Laughlin diligently pursued his investigation into his suspicions in ways that were likely to quickly confirm or dispel them. *See Belcher*, 244 S.W.3d at 539. The video recording of the stop shows that before Stokes's driver's license returned clear, Stokes denied having anything illegal in her vehicle, and Laughlin asked if she minded if he checked. Less than thirty seconds later, Stokes's driver's license returned clear. Approximately thirty-five seconds after her license cleared, Laughlin told Stokes he had several suspicions why he wanted to check her vehicle and asked again if she minded, and Stokes responded, "No." Approximately three and a half minutes into the search, Laughlin found a pipe loaded with what he believed to be methamphetamines, and about one and a half minutes later he found a gallon-size bag containing what he believed to be methamphetamines.

The evidence developed in the suppression hearing shows Laughlin pointed to specific facts that allowed the trial court to conclude that an objectively reasonable officer would have suspected that criminal activity was afoot, that the investigation occurred in a reasonably short period of time, and that Laughlin investigated his suspicion in a manner reasonably designed to quickly resolve whether Stokes

11

possessed narcotics. Based on this record, the trial court could have reasonably concluded that it was reasonable for Laughlin to continue to investigate for the entire period before Stokes's arrest and that Laughlin diligently pursued his investigation into whether Stokes possessed narcotics. Accordingly, we conclude the record supports that Stokes's detention was not unduly prolonged.

*Consent to Search*

Stokes argues her voluntary consent does not validate the search of her vehicle because it was tainted by Laughlin's illegal stop and detention. "Voluntary consent to search is a well-established exception to the warrant and probable cause requirements of the Fourth Amendment to the United States Constitution." *Montanez v. State*, 195 S.W.3d 101, 105 (Tex. Crim. App. 2006). Under Texas law, and based on article I, section 9 of the Texas Constitution, the State must prove that the defendant consented to a search voluntarily by clear and convincing evidence. *Id.* For a defendant to voluntarily consent to a requested search, the consent must "'not be coerced, by explicit or implicit means, by implied threat or covert force.'" *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973)). Thus, the State must show that the defendant's consent was given freely, unequivocally, and without duress or coercion. *Allridge v. State*, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991).

In a suppression hearing, the trial court must examine whether the defendant's consent was voluntary from the "totality of the circumstances from the point of view of an objectively reasonable person, including words, actions, or circumstantial evidence." *Tucker v. State*, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012). Just as "reasonableness" is the touchstone of the Fourth Amendment, "reasonableness" is also the touchstone for determining whether a defendant voluntarily consented to a search. *See Meekins v. State*, 340 S.W.3d 454, 459 (Tex. Crim. App. 2011). In evaluating whether a defendant voluntarily consented to a search, the ultimate question is whether the person's "'will ha[s] been overborne and h[er] capacity for self-determination critically impaired[.]'" *Id.* (quoting *U.S. v. Watson*, 423 U.S. 411, 424 (1976) (other citations omitted)). "If the record supports a finding by clear and convincing evidence that consent to search was free and voluntary, we will not disturb that finding." *Carmouche*, 10 S.W.3d at 331.

With respect to Stokes's claim that her consent was involuntary, the trial court found that Stokes consented to the search and never withdrew her consent. That finding, like other findings of historical facts, is given almost complete deference. *See Montanez*, 195 S.W.3d at 108-09. The video recording of the stop shows that Stokes consented to a search of her vehicle. While none of the evidence showed that Stokes was told she could refuse or that she was free to leave, the State was not required to prove that Stokes was aware she could refuse or knew she was free to

13

leave to show that her consent was voluntary. *See Schneckloth*, 412 U.S. at 232-33. While Stokes argues her consent was tainted by Laughlin's illegal stop and detention, we have already determined that Laughlin had reasonable suspicion to initiate the stop and that Stokes's detention was not unduly prolonged.

As a mixed question of law and fact, the trial court was entitled to consider the circumstances as a whole in determining the voluntariness of Stokes's consent. *See Ohio v. Robinette*, 519 U.S. 33, 40 (1996); *Stephenson v. State*, 494 S.W.2d 900, 904 (Tex. Crim. App. 1973). The trial court could reasonably conclude from the video recording and all the circumstances of the search that Stokes's consent was not coerced by explicit or implicit means. *See Carmouche*, 10 S.W.3d at 331. Viewing the evidence in the light most favorable to the trial court's ruling and giving the trial court's determination of the facts almost total deference, we hold the trial court did not abuse its discretion by finding that Stokes voluntarily consented to the search.

## CONCLUSION

Having determined that Laughlin had reasonable suspicion to stop Stokes, Stokes' detention was not unduly prolonged, and that Stokes voluntarily consented to the search, we conclude the trial court did not err by denying Stokes's Motion to Suppress. We overrule Stokes's sole issue and affirm the trial court's judgment.

14

AFFIRMED.

JAY WRIGHT
Justice

Submitted on July 18, 2025
Opinion Delivered August 13, 2025
Do Not Publish

Before Golemon, C.J., Wright and Chambers, JJ.

15